UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DIRK EPPERSON and<br>BETTY SCHNEIDER,<br><br>       Plaintiffs,<br><br>v.<br><br>IRVIN RICHTER, HILL<br>INTERNATIONAL, INC., HILL ARTS &<br>ENTERTAINMENT SYSTEMS, INC.<br>n/k/a HAESI SOFTWARE, INC.,<br><br>       Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION NO.<br>3:01CV1798(AWT)<br><br><br><br><br><br><br><br>MARCH 23, 2007 |

**<u>MEMORANDUM IN SUPPORT OF DEFENDANTS'</u>**
**<u>MOTION IN LIMINE RE: COLLATERAL ESTOPPEL</u>**

I.    <u>Introduction</u>

Defendants Irvin Richter ("Richter") and Hill International, Inc. ("Hill") (together, the "Hill Defendants") submit the instant Memorandum in support of their Motion in Limine to prevent Plaintiffs, Dirk Epperson and Betty Schneider ("Plaintiffs") from relitigating in the instant action (the "Instant Action") issues previously litigated and decided in a prior related action between Plaintiffs and the Hill Defendants, among others, known as <u>Epperson v. Entertainment Express, Inc.</u>, 338 F. Supp. 2d 328 (D. Conn. 2004), <u>aff'd</u>, 159 Fed. Appx. 249 (2d Cir. 2005), <u>cert. denied</u>, 126 S. Ct. 2296 (U.S. 2006) (the "Fraudulent Transfer Action"). In the Fraudulent Transfer Action, this Court determined that Richter and Hill held valid perfected security interests in the assets of Hill Arts & Entertainment Systems, Inc. ("Hill A&E") and the proceeds of such assets, a Convertible Note, which security interests for exceeded the value of the assets and the Convertible Note. For the reasons set forth below, under the doctrine of

collateral estoppel, Plaintiffs should not be permitted to relitigate this issue in the Instant Action nor should they be permitted to relitigate the subsidiary factual determinations made by the Court in support of its determination of this issue (collectively the "Disputed Issues").

II.     Findings in the Fraudulent Transfer Action

The Court found in the Fraudulent Transfer Action that Hill had loaned Hill A&E "about $12 million" and that Hill became a secured creditor of Hill A&E.  Id. at 330.  In support of these findings, the Court made several ancillary findings of fact, including the following:  "On April 1, 1994, Hill A&E and Hill entered into a Loan and Security Agreement. In this agreement, the parties stated the following: '[Hill A&E] has borrowed from [Hill] for several years on a line of credit. [Hill A&E] and [Hill] wish to renew this Line of Credit Loan in the amount of $12,000,000 for another five year period.'"  Id. at 338 (internal citations omitted). The Court further found that, that the agreement stated that

> [Hill] shall establish for [Hill A&E] a $12,000,000 line of credit ("Line of Credit Loan") pursuant to which advances have been made and, in [Hill's] discretion, additional advances for the payment of obligations of [Hill A&E] may be made by [Hill] and for payment of interest on this Line of Credit Loan may be made from time to time up to a maximum aggregate outstanding principal balance of Twelve Million ($12,000,000.00) Dollars. The Line of Credit Loan shall accrue at the rate of Seven (7%) per annum.

Id.

The Court also found that, "[t]he agreement further provided that Hill would take a security interest in 'collateral,' which is defined as 'all Accounts Receivable, Equipment, Inventory, Contract Rights and General Intangibles of Borrowers and Guarantor, all of the foregoing whether now owned or hereafter acquired'. . . , 'now owned or hereafter

acquired by [Hill A&E] and all cash and non-cash proceeds thereof and proceeds of proceeds,'" Id. (citations omitted). Additionally, the Court found that, "Hill A&E made a Replacement Line of Credit Note payable to Hill on April 1, 1994. UCC-1 statements with respect to Hill's security interest were filed in Connecticut on June 7, 1994, New Jersey on June 8, 1994, and California on October 18, 1994." Id. The Court found that "[b]oth statements set forth the following property as subject to the security interest:

> All 'Accounts', 'Contracts', 'Contract Rights', 'Chattel Paper', 'Instruments', 'Documents', 'General Intangibles', 'Inventory', 'Equipment', and 'Fixtures' as each term is defined in the Uniform Commercial Code as enacted in the State of New Jersey, all deposits and bank accounts, all other personal property, tangible or intangible, all books and records relating to the foregoing and all proceeds and products thereof and substitutions, additions and accessions thereto, now existing or hereafter acquired, wherever located.

Id.

The trial court further determined that, "[a]s of the date of the sale [of Hill A&E's assets to Entertainment Express], Hill A&E owed Hill $8,402,909.18 in principal and $3,782,000.00 in interest pursuant to the April 1, 1994 Loan and Security Agreement." Id. at 340.

The Court in the Fraudulent Transfer Action also made findings with respect to a loan from Richter to Hill A&E. The Court found that "[o]n November 26, 1991, Hill A&E made a promissory note payable to Richter with the principal amount of $1,100,000.00. The note was payable on demand, with an interest rate at the prime rate as set by Commerce Bank, N.A. plus 1.5%." Id. at 337. The Court further found, "on November 26, 1991, Hill A&E executed a security agreement in all of Hill A&E's personal property as collateral for the promissory note. UCC-1 financing statements with respect to Richter's security interest were filed in Connecticut on December 5,

1991, in New Jersey on December 10, 1991 and in California on October 24, 1994." Id. The Court determined that "[t]he security agreement and the UCC-1 statements cited the following property as subject to the security interest granted to Richter:

> All 'Accounts', 'Contracts', 'Contract Rights', 'Chattel Paper', 'Instruments', 'Documents', 'General Intangibles', 'Inventory', 'Equipment', and 'Fixtures' as each term is defined in the Uniform Commercial Code as enacted in the State of New Jersey, all deposits and bank accounts, all other personal property, tangible or intangible, all books and records relating to the foregoing and all proceeds and products thereof and substitutions, additions and accessions thereto, now existing or hereafter acquired, wherever located."

Id. at 337-338.

Additionally, the Court found that, "[s]ubsequent to Hill A&E and Hill's agreement, Richter recorded a subordination of his security interest to that of Hill. On September 8, 1994, Richter filed a UCC-3 Statement of Subordination in New Jersey, which certified that he had subordinated his security interest in Hill A&E's property to Hill's security interest. Richter's October 24, 1994 UCC-1 statement, which was filed in California, also indicated that Hill's interest was superior to Richter's. On October 31, 1994, Richter filed a UCC-3 statement of subordination in Connecticut reflecting the same." Id. at 338-39. The Court found that on the date of the asset sale, May 31, 1996, Hill A&E "owed Richter $682,344.00 . . . which was also secured." Id. at 340.

The Court determined that "[o]n May 31, 1996, Hill A&E sold substantially all of its assets to [Entertainment Express], and changed its name to 'HAESI'. Payment was in the form of a convertible note to HAESI from [Entertainment Express] in the amount of $3,000,000.00, with interest to accrue at a rate of 8% per year. The principal was due on May 31, 2001. Interest on the convertible note was to be paid annually on May 31 of each year, the first payment of which was to be paid in stock, and each payment

thereafter in either stock or cash, at [Entertainment Express'] discretion. The convertible note gave the holder the right to convert any amount of the principal balance thereof into [Entertainment Express ] stock." Id. at 339-40 (footnote omitted).

The Court found that as Hill A&E's "secured creditors, Hill and Richter took liens on the convertible note as proceeds from the asset sale." Id. at 340. Additionally, the Court found that, "[a]s a condition of the asset sale to [Entertainment Express], both Hill and Richter released their security interests on the assets transferred to [Entertainment Express], and substituted the convertible note, and any payments made thereunder, as collateral for their loans to [Hill A&E]. Hill and Richter subsequently filed UCC-1 statements in New Jersey listing the following collateral as subject to their respective security interests:

> Debtor's interest in the $3,000,000 Convertible Promissory Note ('Note') from Entertainment Express, Inc. to Debtor dated May 31, 1996; all shares of stock hereafter acquired by Debtor as interest or upon conversion of the Note; all interest, dividends and distributions payable with respect to the foregoing (whether or not the same constitute general intangibles); and all proceeds of the foregoing."

Id. Finally, the Court found that, "Hill, which is located in New Jersey, took possession of the convertible note following the asset sale, and payments under the convertible note were made to Hill. Hill then foreclosed on the note on November 11, 1996." Id. (The foregoing factual findings of the Court may hereinafter be collectively referred to as the "Court's Factual Findings").

Based upon the Court's Factual Findings, the Court determined that "Hill A&E's property, and any property transferred to HAESI on May 31, 1996, specifically the convertible note, was encumbered by security interests that exceeded the value of the property, . . ." and that "Hill and Richter had perfected security interests well in excess of

the value of both Hill A&E's property and the convertible note payable." Id. at 342. The Court further determined that Hill's and Richter's security interests "are 'valid liens' that exceeded the value of the collateral, . . ." meaning that each such lien was "'a charge against or an interest in property to secure payment of a debt or performance of an obligation, and includes a security interest created by agreement, . . .'" Conn. Gen. Stat. § 52-552b(2), and that each lien was "'effective against the holder of a judicial lien subsequently obtained by legal or equitable process or proceedings.'" Conn. Gen. Stat. § 52-552b(13). Id. The Court also ruled that "[t]he original security interest in Hill A&E's property covered proceeds from the sale of the property, and therefore covered the convertible note. Id. at 344 n.14. (The foregoing legal conclusions may hereinafter collectively be referred to as the "Court's Legal Conclusions"). (The Court's Factual Findings and the Court's Legal Conclusion may be collectively referred to as the "Disputed Issues").

III.  ARGUMENT

> The Doctrine of Collateral Estoppel Precludes the Relitigation of the Court's Factual Findings and the Court's Legal Conclusions

The doctrine of issue preclusion or collateral estoppel bars a party from relitigating in a second proceeding an issue that was fully and fairly litigated in a prior proceeding. Uzdavines v. Weeks Marine, Inc., 418 F.3d 138, 146 (2d Cir. 2005); Marvel Characters, Inc. v. Simon, 310 F.3d 280, 288 (2d Cir. 2002).  Collateral estoppel applies when: (1) the issues in both proceedings are identical; (2) the issue was actually litigated and actually decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.  Riley v. United States, 78 Fed. Appx.

774, 776 (2d Cir. 2003).  Federal courts apply federal law in determining the preclusive effect of a federal judgment.  <u>Marvel Characters</u>, 310 F.3d at 286.

### 1. The Issues in Both Cases are Identical

The first requirement for the application of collateral estoppel – that the issues in both proceedings are identical – is easily satisfied here.  In both actions, Plaintiffs dispute the existence of the loans from Hill and Richter to Hill A&E, the validity of the security interests held by Hill and Richter in Hill A&E's assets and whether the security interests exceeded the value of Hill A&E's assets and the Convertible Note.  <u>See</u> Second Amended Complaint, Instant Action, Docket #12, Count One ¶ 9(c); Plaintiffs' Memorandum of Law in Support of Motion for Summary Judgment, Instant Action, Docket # 60, at 13, 14, 16, 20, 21; Plaintiffs' Separate Statement of Facts Pursuant to Local Rule 9(c)2, Instant Action, Docket # 70, Statements 70-72, 82, 83, 101, 102, 103; Complaint, Fraudulent Transfer Action, Docket #1, Second Cause of Action ¶ 2 and Prayer for Relief ¶ 2; Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment and in Support of Plaintiffs' Cross Motion for Summary Judgment, Fraudulent Transfer Action, Docket # 61 & 66 ("Plaintiffs' Summ. Judg. Mem."), at 3-4, 6, 8, 9-12; Plaintiffs' Local Rule 9(c)2 Statement, Fraudulent Transfer Action, Docket # 64, ¶ ¶ 4, 9-19, 26-31.  Thus, the Disputed Issues are identical in both proceedings.

### 2. The Disputed Issues Were Actually Litigated and Decided

As to the second requirement for the application of the doctrine of collateral estoppel, the Disputed Issues were actually litigated and decided in the Fraudulent Transfer Action, as both parties addressed these issues extensively in their summary judgment briefs in the Fraudulent Transfer Action.  <u>See</u> briefs cited <u>supra</u> at p. 7.  <u>See</u>

also Corrected Memorandum in Support of Defendants Entertainment Express, Inc.'s n/k/a Advantix Inc.'s and Hill International Inc.'s Motion for Summary Judgment, Docket # 42 ("Defendants' Summ. Judg. Mem.") at 2-6, 12-17; Appearing Defendants' Opposition to Plaintiffs' Motion for Summary Judgment, Docket # 70, at 4-5, 20-23; Defendants Hill International Inc.'s and Entertainment Express, Inc. n/k/a/ Advantix, Inc.'s Reply to Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment, Docket # 79, at 1-2, 4-15, 18-20; Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Cross Motion for Summary Judgment, Docket # 81, at 1-5, 8-9.

In its decision on the parties' cross motions for summary judgment in the Fraudulent Transfer Action, the Court found, inter alia, that "Hill loaned Hill A&E about $12 million and became a secured creditor of Hill A&E." Epperson v. Entertainment Express, Inc., 338 F. Supp. 2d at 330. The Court also found that at the time of the sale, Hill A&E owed Richter $682,344.00 which was also secured. Id. at 340. The Court further determined that Hill and Richter held perfected security interests in Hill A&E's assets and the Convertible Note, that such security interests were valid liens and that the security interests exceeded the value of Hill A&E's assets and the Convertible Note. Id. at 342.

For purposes of the doctrine of collateral estoppel, the Disputed Issues have been finally decided, as trial court decisions on summary judgment constitute decisions on the merits and are entitled to full preclusive effect. Country Rd. Music, Inc. v. MP3.com, Inc., 279 F. Supp. 2d 325, 328-29 (S.D.N.Y. 2003) (applying doctrine of collateral estoppel to bar relitigation of issues that were "raised and resolved" on summary judgment in prior actions); TufAmerica, Inc. v. Hammond, No. 99 Civ. 10369

(CSH), 2002 U.S. Dist. LEXIS 9258, at *18 (S.D.N.Y. May 22, 2002) (finding that decisions on summary judgment deal with the sufficiency of the proof and are entitled to preclusive effect); Jeffreys v. Teamsters Local Union No. 1150, Civ. No. 3:97CV1538 (AHN), 2001 U.S. Dist. LEXIS 7368, at *8-13 (D. Conn. Feb. 28, 2001), aff'd 28 Fed. Appx. 92 (2d Cir. 2002) (applying doctrine of collateral estoppel to bar relitigation of issues decided on summary judgment in another action). Thus, because the Disputed Issues were actually litigated and decided, the second requirement for application of collateral estoppel has been satisfied.

### 3. Plaintiffs had a Full and Fair Opportunity to Litigate the Disputed Issues

As to the third requirement for the application of collateral estoppel, Plaintiffs had a full and fair opportunity to litigate the Disputed Issues in the Fraudulent Transfer Action. Appropriate considerations in determining whether a plaintiff had a full and fair opportunity to litigate an issue in a prior action are: (1) a plaintiffs' incentive to vigorously litigate an issue in a prior action; (2) the presence of procedural opportunities in the second case which were unavailable in the earlier case; (3) the existence of inconsistent judgments; and (4) whether, through no fault of its own, a plaintiff was deprived of crucial evidence or witnesses in the earlier action. TufAmerica, 2002 U.S. Dist. LEXIS 9258 at *25-26. None of the foregoing considerations apply here. Plaintiffs were clearly motivated to litigate the Disputed Issues in the Fraudulent Transfer Action, as these issues were determinative of the outcome of the Fraudulent Transfer Action, which was whether Hill A&E's assets and the Convertible Note were "assets" within the meaning of the Uniform Fraudulent Transfer Act , Conn. Gen. Stat. § Conn. Gen. Stat. § 52-552b(2), because they were encumbered by valid liens, and therefore subject to

the UFTA.  As noted above, both parties provided extensive submission about the Disputed Issues in their pleadings and briefs.  Plaintiffs, in particular, addressed these issues in at least 20 pages in 4 filings.  See Complaint, Fraudulent Transfer Action, Docket #1, Second Cause of Action ¶ 2 and Prayer for Relief ¶ 2; Plaintiffs' Summ. Judg. Mem., Fraudulent Transfer Action, Docket # 61 & 66 at 3, 6, 8, 10-12; Plaintiffs' Local Rule 9(c)2 Statement, Fraudulent Transfer Action, Docket # 64, ¶¶ 9-10; Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Cross Motion for Summary Judgment, Fraudulent Transfer Action Docket #81, p. 1, 4-5.

Second, there are no procedural opportunities present in the Instant Action which were unavailable in the Fraudulent Transfer Action. Both cases were pending in this Court, and the same discovery, procedural and evidentiary rules are applicable to both cases. Plaintiffs availed themselves of full discovery and appellate opportunities in the Fraudulent Transfer Action, including appealing the trial court's decision to the United States Court of Appeals for the Second Circuit on two occasions and attempting to appeal the final decision to the United Sates Supreme Court. Additionally, Plaintiffs also had access to the same witnesses and evidence in the Fraudulent Transfer Action as they do in the Instant Action.  Thus, the third requirement for application of collateral estoppel has been met.  See Marvel Characters, Inc. v. Simon, 310 F.3d at 286 (stating that collateral estoppel operates to "prevent parties from contesting matters they have had a full and fair opportunity to litigate, thereby conserving judicial resources and protecting parties from the expense and vexation of multiple lawsuits").

>    4.   The Resolution in the Fraudulent Transfer Action of the Disputed Issues was Necessary to Support the Decision in that Case

Fourth and finally, the resolution of the Disputed Issues was necessary to support a valid and final judgment on the merits of the Fraudulent Transfer Action. As stated above, one of the issues in the Fraudulent Transfer Action was whether Hill A&E's assets, which were sold to Entertainment Express, were "assets" within the meaning of the UFTA, because such assets were encumbered by valid liens that exceeded the value of the transferred assets. Epperson v. Entertainment Express, Inc., 338 F. Supp. 2d at 342. The Court's findings regarding the amount of the loan from Hill to Hill A&E, the amount owed by Hill A&E to Richter, and the Hill Defendants' status as secured creditors were necessary to the determination that Hill A&E's property and the proceeds of such property, the $3 million Convertible Note, were fully encumbered and therefore not "assets" under the UFTA. Because the assets and the Convertible Note were not "assets" under the UFTA, the Court found that Plaintiffs could not maintain an action against Defendants for allegedly fraudulently transferring such assets. Id. The Court wrote, "[b]ecause Hill A&E's property, and any property transferred to HAESI on May 31, 1996, specifically the convertible note, was encumbered by security interests that exceeded the value of the property, plaintiffs may not pursue a remedy under UFTA." Id. Thus, the fourth and final requirement for the application of collateral estoppel has been met.

## IV.   CONCLUSION:

For the foregoing reasons, Defendants' Motion In Limine to preclude Plaintiffs from relitigating issues that Hill's and Richter had valid security interests in Hill A&E's assets and the Convertible Note, which security interests exceeded the value of Hill

A&E's assets and the Convertible Note and from relitigating the Court's Factual

Findings, already decided in the Fraudulent Transfer Action, should be granted.

        DEFENDANTS
        IRVIN RICHTER and HILL INTERNATIONAL, INC.,


    BY */s/ Carolyn W. Kone*
        Carolyn W. Kone (CT 06207)
        Brenner, Saltzman & Wallman LLP
        Their Attorneys
        271 Whitney Ave.
        New Haven, CT  06511
        Tel. (203) 772-2600
        Fax (203) 562-2098
        E-mail: ckone@bswlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2007, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.

*/s/ Carolyn W. Kone*
Carolyn W. Kone