UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DIRK EPPERSON and<br>BETTY SCHNEIDER,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>IRVIN RICHTER, HILL<br>INTERNATIONAL, INC., HILL ARTS &<br>ENTERTAINMENT SYSTEMS, INC.<br>n/k/a HAESI SOFTWARE, INC.,<br><br>　　　　　Defendants. | CIVIL ACTION NO.<br>3:01CV1798(AWT)<br><br><br><br><br><br><br><br>JUNE 18, 2008 |

### REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO PRECLUDE

I.   Introduction

In their Opposition to Defendants' Memorandum in Opposition to Motion to Preclude the Testimony of Plaintiffs' Expert Witness, Walter C. King ("Plaintiffs' Opposition"), Plaintiffs Dirk Epperson and Betty Schneider ("Plaintiffs") have failed to provide any legally cognizable bases for denying Defendants Irvin Richter ("Richter") and Hill International Inc.'s ("Hill") (collectively "Defendants") Motion to Preclude the Testimony of Plaintiffs' Expert Witness, Walter C. King. Plaintiffs have not set forth any reason for their eight-year delay in alerting the Court and Defendants of their intention to offer Mr. King's testimony and their refusal to date (over nine years after this case was filed) to provide a report from Mr. King as is required by Fed. Civ. P. 26(a)(2)(B). Moreover, this case is set for trial on October 20, 2008. It would extremely prejudicial to Defendants to permit Mr. King's testimony, even if a report were somehow instantaneously produced. Defendants will be unable both to prepare for trial in this case, which involves hundreds of complex financial documents and numerous witnesses, and at the same time, once Mr. King's report is provided (if it ever is), study such report, obtain their own expert, have their own expert prepare a report, depose Mr. King, make their own expert available for deposition, determine if a motion to preclude Mr. King's testimony is appropriate, and revise their pretrial memorandum. Finally, Mr.

King's testimony cannot be considered essential to Plaintiffs' case. Plaintiffs have filed two motions for summary judgment in this case without Mr. King's testimony arguing the same positions that it appears that Mr. King will testify about. Moreover, many of the issues that Mr. King is expected to testify about were determined adversely to Plaintiffs in the fraudulent conveyance action between Plaintiffs and Defendants, <u>Epperson, et al. v. Entertainment Express, et al.</u>, Docket No. 3:99-cv-00778(DJS) (the "Fraudulent Conveyance Action"), and, therefore, Plaintiffs are collaterally estopped from offering Mr. King's testimony about these topics. Accordingly, Defendants' Motion to Preclude must be granted.

II.   <u>Discussion</u>

   A.   <u>The Final Scheduling Order Is Still In Effect</u>

Plaintiffs claim that they were not bound to disclose their expert witness on July 31, 2001 in accordance with the Final Scheduling Order dated April 24, 2001 entered by the New Jersey District Court (Dkt. #30) (the "Final Scheduling Order"), because when this case was transferred to this District, the parties understood that "the case would be managed here by the Connecticut court." (Plaintiffs' Opposition at 2).[1] However, the deadline for Plaintiffs to disclose their expert was July 31, 2001 while the case was still pending in the New Jersey District Court, as this case was not transferred to this District until September 17, 2001. Accordingly, Plaintiffs missed the deadline for expert disclosure before the Connecticut court even began to "manage" this case.

Additionally, there is no indication that either the New Jersey District Court or this Court intended to vacate the orders entered by the New Jersey court once this case was transferred to Connecticut. The docket indicates that the whole original file was transferred to the Connecticut District on September 20, 2001. Additionally, this Court treated matters pending before the New Jersey District Court as ones which it required its attention (<u>see</u> Dkt. #45 denying without prejudice Defendants' Motion to Dismiss or Stay on September 25, 2001 and Dkt. #47 denying without prejudice Plaintiffs' Motion for Summary Judgment on January 31, 2002, both of which motions had

---

[1] <u>See</u> also Plaintiffs' Opposition at 8.

aa1311.doc                                    2

been pending before the New Jersey District Court).[2] Additionally, neither party conducted any discovery after the discovery cut-off date in the Final Scheduling Order. Had Plaintiffs any doubt about the continued vitality of the Final Scheduling Order, they should have moved to extend the deadline for disclosure of expert witnesses and not just have listed Mr. King in their Pretrial Memorandum as one of their witnesses. Plaintiffs' view that the Final Scheduling Order was of no legal effect after the case was transferred to Connecticut would mean that, in fact, there is no scheduling order in force for this case, with the consequence that Plaintiffs (or even Defendants) could continue to take discovery through trial, and there would be no discovery cut-off date in this case. This result would create chaos in this case and is clearly prohibited by of Fed. R. Civ. P. 16(b).

Plaintiffs also claim that they should not be bound by the Final Scheduling Order, because Defendants have not complied with the Final Scheduling Order with respect to the time for filing dispositive motions. Plaintiffs note that Defendants filed their motion for summary judgment on May 3, 2002, and the Final Scheduling Order set October 19, 2001 as the deadline for filing dispositive motions. However, Judge Squatrito specifically modified the dates for filing dispositive motions in this case on January 31, 2002, when he set April 15, 2002 as the date for both parties to file dispositive motions. (Dkt. #45). The date to file motions for summary judgment was thereafter extended by the Court until May 3, 2002 initially to May 1, 2002, at the request of Plaintiffs (Dkt. #51), and thereafter, for two days until May 3, 2002 at the request of Defendants (Dkt. #58). In contrast, none of the discovery deadlines in the Final Scheduling Order were modified by this Court, including the deadline to disclose expert witnesses.

Plaintiffs finally claim that Defendants also did not comply with the Final Scheduling Order concerning the disclosure of expert witnesses, because Defendants disclosed their expert, Steve Economu, in their Supplemental Responses to Plaintiffs' Interrogatories dated March 31, 2005.

---

[2] In contrast to Plaintiffs' statement that Judge Squatrito's denial of their Motion for Summary Judgment was "pro-forma . . . based upon the understanding that the Connecticut court was now handling the case" (Plaintiffs' Opposition at 8), in fact, Plaintiffs' Motion for Summary Judgment was denied, because it did not have the proper supporting documentation in accordance with Connecticut Local Rule #9. (Dkt. #47).

aa1311.doc                          3

However, as stated in these supplemental responses, Mr. Economu is a fact witness and not an expert witness. Mr. Economu authored a Fairness Opinion when the assets of Hill Arts & Entertainment Systems, Inc. ("Hill A&E") were sold to Entertainment Express, Inc. ("Entertainment Express") in May 1996. Defendants first disclosed Mr. Economu's report to Plaintiffs and their intention to call Mr. Economu as a witness, eleven years ago, in November 1997, after Plaintiffs amended their complaint to join Defendants in their collection case against Hill A&E, <u>Epperson, et al v. Hill Arts & Entertainment Systems, Inc., et al.</u>, Docket No. 3:95-cv-01331(DJS) (the "Underlying Action") and to add counts of fraudulent transfer and alter ego against Defendants. (<u>See</u> Dkt. #5). At that time, Plaintiffs ought a prejudgment remedy against Defendants.[3] (<u>See</u> Memorandum of Law in Opposition to Plaintiffs' Application for Prejudgment Remedy in the Underlying Action with Fairness Opinion attached thereto dated November 17, 1997 (Dkt. #57) and Proposed Witness List (Dkt. #59)). Defendants subsequently sent a second copy of the Fairness Opinion to Plaintiffs after a status conference with Judge Squatrito in January 1998 in the Underlying Action. In fact, Plaintiffs have relied upon and attached the Fairness Opinion in a number of their filings in this case over the last seven years, including Plaintiffs' memoranda and documents filed in support of their March 27, 2001 summary judgment motion (<u>see</u> Dkt. #23 (Ex. R to Plaintiffs' Exhibits in Support of Motion for Summary Judgment) which specifically references the Fairness Opinion) and their subsequent Motion for Summary Judgment dated May 3, 2002, also referencing extensively the Fairness Opinion (<u>see</u> Rule 9(c) Statement dated May 3, 2002 (Dkt. #56), Findings #s 6, 53, 54, 55, 56, 103 and 107). Plaintiffs have had more than adequate opportunity to depose Mr. Economu about the Fairness Opinion over the last 11 years. Accordingly, even if Mr. Economu is considered to be an expert witness for Defendants, his report was disclosed to Plaintiffs years before the deadline set by the Final Scheduling Order. In contrast, Plaintiffs have, to date, failed to serve their expert's report on Defendants as required by Fed. R. Civ. P26(a)(2)(B) and the Final Scheduling Order.

---

[3] The Underlying Action was dismissed as to Defendants on the basis of lack of diversity jurisdiction, and the prejudgment remedy hearing was never held.

aa1311.doc                                                  4

B.   Plaintiffs Have Failed to Provide Any Explanation for their Failure to Disclose Mr. King as An Expert Witness

"In determining whether preclusion of testimony is warranted, courts are required to consider the following factors: (1) the party's explanation for the failure to comply with the disclosure order. . . ." Arnold v. Krause, Inc., 2333 F.R.D. 126, 130 (W.D.N.Y. 2005)(holding that expert witness would be precluded from testifying based, in part, upon inadequate explanation of plaintiffs' reason for failure to make timely disclosure). Here, Plaintiffs have offered no explanation for their failure to make a timely disclosure of their expert and their failure, to date, to provide an expert report.

In an effort to distract the Court from considering the factors required to be reviewed when deciding a motion to preclude, Plaintiffs claim that there have been a number of wrongdoings by Defendants, including alleged discovery abuses and the failure of Defendants to file an answer until 2002 (Plaintiffs' Opposition at 4-8). As set forth below, Defendants deny any such wrongful conduct and note that Plaintiffs do not even claim, nor could they, that any such alleged misconduct caused Plaintiffs to delay or fail to disclose their expert and his report.

First, Defendants deny that there were any discovery abuses in this case and note that Plaintiffs have made a number of serious misrepresentations in Plaintiffs' Opposition about the procedural history of this case. Plaintiffs misrepresent to the Court that this Court entered a judgment "for defendants '. . . having failed to comply with the court's order to produce certain discovery. . . .' " (Plaintiffs' Opposition at 4). In fact, the default judgment that Plaintiffs reference is a judgment not against Defendants but a default judgment against Hill A&E in the Underlying Action. Plaintiffs similarly state, "[P]ost judgment interrogatories issued by Plaintiffs were never answered." (Id.). Plaintiffs fail to disclose to this Court that the post judgment interrogatories were similarly addressed to Hill A&E and not to Defendants.

Plaintiffs thereafter claim that when the instant case was pending before the New Jersey District Court, there were "discovery abuses." In fact, the discovery process was closely supervised by Honorable Magistrate Joel B.Rosen who held a number of status conferences in the case and issued a number of scheduling orders regarding discovery. (See Civil Docket for Case 31:99-cv-

03053-SSB and entries on 11/04/99; 12/04/00, 2/21/01, 4/21/01, 7/17/01 as well as Dkts. #s 21, 23, 28, 29, and 45). No sanctions were entered or discipline taken against Defendants by the New Jersey District Court.

In fact, in December 2000, although Defendants had not received formal discovery requests from Plaintiffs, Defendants, in response to Plaintiffs' informal requests, agreed to produce "all requested corporate books, loan origination and/or repayment activity documents and the requested asset purchase agreement" at Hill's offices. The only documents Defendants did not agree to produce were documents in the possession of Tickets.com, Inc. (the successor to Entertainment Express, Inc.), which Defendants did not have in their possession and documents related to RL Holdings, an owner of Tickets.com (see Exhibit E to Exhibit L to the Affidavit of Robert Sullivan dated May 27, 2008 ("Sullivan Affidavit") (Dkt. #192)). The documents that Defendants made available for inspection to Plaintiffs comprised several boxes. On December 11, 2000, Defendants also served on Plaintiffs their initial disclosures, which described their witnesses and again listed numerous documents.

On February 20, 2001, Defendants answered Plaintiffs' interrogatories and production requests. Even in Plaintiffs' view at that time, Richter provided "suitable responses" to 108 of the 142 questions and Hill provided suitable responses to 39 of the 52 interrogatories propounded by Plaintiffs. (See Ex. M to Sullivan Affidavit).[4] In addition, Plaintiffs propounded 45 requests for production on Richter and 27 requests for projection on Hill. In response to these requests on February 20, 2001, Defendants agreed to produce numerous documents including the Fairness Opinion in response to the request for reports from experts whom Hill intended to call at trial, (see Exhibit A). Subsequent to February 20, 2001, Plaintiffs did not pursue any additional responses from Defendants to these discovery requests. In fact, Plaintiffs moved for summary judgment in

---

[4] Plaintiffs state in Plaintiffs' Opposition that Defendants "flatly refused to identify any such expert witness" in their interrogatory responses. This is false. Defendants stated in their interrogatory responses that such expert witnesses had not yet been determined, although Hill did identify on February 20, 2001, the Fairness Opinion in its response to Plaintiffs' Production Requests asking for expert reports. (See answer to production request # 25, attached hereto as Exhibit A).

February 2001, and no further discovery has been conducted by either party since February 2001.

Accordingly, well before Plaintiffs' disclosure of expert was due or even the Final Scheduling Order had been entered in this case, discovery had been concluded in this matter. Although Plaintiffs' complain that there were a number of "discovery abuses" (which Defendants deny), even Plaintiffs do not claim that Defendants' conduct with respect to the discovery process hindered their disclosure of Mr. King or his report.[5]

Additionally, Plaintiffs complain that Defendants did not file their answer until 2002.[6] (Plaintiffs' Opposition at 6). Defendants filed their answer in May 2002 after their Motion to Dismiss was denied by this Court. However, Plaintiffs were fully aware of Defendants' defenses to the alter ego claims in this case before their expert disclosure was due in July 2001, because Defendants had filed a memorandum and an affidavit in opposition to Plaintiffs' Motion for Summary Judgment in

---

[5] Plaintiffs also complain of a number of other items that are also completely unrelated to the disclosure of Mr. King and his report. Plaintiffs state that discovery was delayed by a Motion to Dismiss filed by Defendants based upon the first filed rule, which was inaccurate and was denied (Plaintiffs' Objection at 4, 5). Plaintiffs do not disclose that the May 25, 2000 order of the New Jersey District Court initially denying the motion to dismiss was based upon the fact that the Fraudulent Conveyance Case, which Defendants had claimed was "first filed," was on appeal before the Second Circuit and that the dismissal was without prejudice to the refiling of the motion after the appeal was resolved. Defendants did refile their motion to dismiss after the Second Circuit remanded the Fraudulent Conveyance case to this Court. The motion to dismiss was eventually denied without prejudice by this Court without any finding on the merits. (Dkt. #45). Plaintiffs also complain about the scheduling of Plaintiffs' depositions, which were, in fact, scheduled on the dates that Plaintiffs requested, the failure of Hill A&E to respond to the discovery requests, when counsel for the Defendants were not representing Hill A&E (Plaintiffs' Opposition at 5), and the two month delay by Defendants in filing their complete motion package when they refiled their motion to dismiss (see Plaintiffs' Objection at 6), which delay the New Jersey Court excused. (Dkt. #40). All of these items are completely irrelevant to Plaintiffs' failure to disclose their expert in a timely and proper manner.

[6] Plaintiffs also complain that their interrogatories asking Defendants to detail the bases for their answer were responded to by Defendants stating that Defendants had not filed an answer yet. (Plaintiffs' Objection at 6). It is difficult to determine what other answer Defendants could have provided in February 2001, when their answer had not yet been filed, because their Motion to Dismiss based upon subject matter jurisdiction was still pending. Plaintiffs also note that in November 16, 2006, Defendants were granted permission to amend their answer. (Plaintiffs' Opposition at 8). The purpose of the amendment was to add a collateral estoppel defense which did not exist until after the Court decided the motion for summary judgment in the Fraudulent Conveyance Action in favor of Defendants, the judgment was affirmed by the Second Circuit and the Supreme Court denied certiorari. Plaintiffs do not claim, nor could they, that their need for an expert witness was occasioned by the amendment of the Answer to add a collateral estoppel defense.

April 2001, which detailed their defenses. (See Dkts. #s 27, 31, 32, 33, 34)[7]. Additionally, once Defendants filed their answer, six years ago, Plaintiffs did not move for permission to disclose their expert. Plaintiffs' misleading attempts to paint the Defendants as having acted improperly in this action rather than trying to meet their burden of proving that their six year delay was justified should be disregarded.

  C. <u>Defendants Would Be Extremely Prejudiced if Mr. King's Testimony is Not Precluded</u>

This case, which is a complex matter involving hundreds of documents and numerous issues, is scheduled for trial from October 20, 2008 – October 29, 2008. It would be highly prejudicial to permit Plaintiffs now to offer Mr. King's testimony at trial, particularly when Plaintiffs have not even disclosed his report. Plaintiffs claim that Defendants could have taken Mr. King's deposition over the last 14 months (Plaintiffs' Opposition at 2). However, during that period, as is true today, Plaintiffs have failed to disclose Mr. King's report, so that any meaningful deposition was and still is not possible.

Moreover, to the extent Defendants can fathom from the Pretrial Memorandum, the subject matter of Mr. King's testimony and the documents that he will rely on, both appear far ranging.

---

[7] Similarly, Plaintiffs misstate Richter's personal jurisdictional challenge filed in Connecticut, which also is completely unrelated to Plaintiffs' failure to timely disclose their expert witness. Richter filed a motion to dismiss for lack of personal jurisdiction in the Fraudulent Conveyance Case and not in this case. When Plaintiffs first sought to assert fraudulent conveyance and alter ego claims against Defendants in the Underlying Action, Richter moved to dismiss those claims in 1997 for lack of personal jurisdiction. The claims against Defendants in the Underlying Action were dismissed on the basis of lack of diversity jurisdiction, and the personal jurisdiction challenge was not ruled upon. When Plaintiffs filed the Fraudulent Conveyance Action in this Court against Richter in 1999, Richter again moved to dismiss that case on the basis of personal jurisdiction in August 1999. The Fraudulent Conveyance Action was dismissed on the basis of lack of supplemental jurisdiction, and Richter's personal jurisdiction claim again was not considered. When this dismissal was reversed by the Second Circuit, Richter refiled this long standing motion to dismiss for lack of personal jurisdiction. Richter did not file a personal jurisdiction challenge to this alter ego case. This Court found in the Fraudulent Conveyance Action, which Defendants prevailed in, that it would not reexamine Connecticut as the proper forum for that case against Richter, in view of the fact that the instant action had been transferred to Connecticut to be heard with the Fraudulent Conveyance Action. None of the foregoing procedural history of the Fraudulent Conveyance Action is in any way related to Plaintiffs' failure to disclose their expert witness, as required by Rule 26(a)(2), in this alter ego case.

aa1311.doc                  8

Mr. King is expected to testify about the "customs and practices pursuant to which companies such as the subject companies are operated" and the "proper accounting methods either used or to be used in transactions such as those engaged by defendants." (Joint Pretrial Memorandum, Plaintiffs' List of Witnesses). Additionally, "[t]he basis for his opinion is the financial statements and other materials which have been identified as exhibits in this trial memorandum." Accordingly, his deposition will likely last for several days because of both the broad range of subject matter and the numerous documents about which he will need to be examined.

Additionally, Defendants will be required to engage their own expert to evaluate Mr. King's report, if one is ever produced, and to create his or her own report. Presumably, Plaintiffs will want to depose Defendants' expert as well. Then, Defendants will need to evaluate Mr. King's testimony to determine if it should be precluded under Daubert or similar rules. At minimum, the Pretrial Memorandum will need to be amended to reflect both Plaintiffs' and Defendants' experts' testimony. All of these activities will take several months, particularly in view of the summer holidays when experts and their counsel may be out of town. To require that Defendants engage in this expedited discovery process while preparing for trial when Plaintiffs have had nine years to disclose their expert report would be highly prejudicial to Defendants.

D.   Mr. King's Testimony is Not Significant to Plaintiffs' Case

One of the factors to be considered when deciding a motion to preclude is the significance of the testimony of the expert. Arnold, 233 F.R.D. at 130. If expert testimony is not essential to a party's case, it is properly precluded. Id. at 130-131. According to Plaintiffs' summary of Mr. King's testimony, Mr. King is anticipated to testify about many issues which were decided adversely to Plaintiffs in the Fraudulent Conveyance Case and therefore which may not be relitigated in this case, e.g., the valuation of the assets transferred, the valuation of the Convertible Note received by Hill A&E, the alleged "reclassification of capital contributions" to debt, and the propriety of Hill A&E's financial statements which showed debt as capital for presentation purposes. Accordingly, much of Mr. King's testimony would be inadmissible.

Moreover, certain of Mr. King's projected testimony is irrelevant. Plaintiffs state that Mr. King is expected to testify "that the transferees of the assets gained a significant advantage over the creditors, inter alia, due to the skewed conversion ratio contained with the Convertible Promissory Note." While this testimony may have been relevant to the Fraudulent Conveyance Action, the Court has already determined that there was no fraudulent transfer as a result of the sale of Hill A&E's assets and granted summary judgment in favor of Defendants in that case. Additionally, the transferee of Hill A&E's assets is not a party to this action. Therefore, this testimony should not be admissible at trial.

Finally, Plaintiffs have not in the past considered expert testimony on the subjects that Mr. King is anticipated to testify about essential to their case in their summary judgment motions. These motions have argued that Hill A&E was under capitalized, the Convertible Note created an allusion of an obligation which did not exist, Hill A&E had negative capitalization, and it was improper for Hill A&E to have certain of its financial statements indicating equity for presentational purposes, while other financial statements showed such amounts as secured debt. If Plaintiffs believed that the Court could decide these issues in Plaintiffs' favor without expert testimony on a motion for summary judgment, obviously such testimony is not essential to Plaintiffs' case at trial.

III. Conclusion

For the foregoing reasons and those stated in Defendants' Memorandum in Support of its Motion to Preclude, Defendants' Motion to Preclude should be granted.

DEFENDANTS
IRVIN RICHTER and HILL INTERNATIONAL, INC.,

BY   /s/ Carolyn W. Kone
    Carolyn W. Kone (CT 06207)
    Brenner, Saltzman & Wallman LLP
    Their Attorneys
    271 Whitney Ave.
    New Haven, CT 06511
    Tel. (203) 772-2600
    Fax (203) 562-2098
    E-mail: ckone@bswlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2008, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.

                                        /s/ *Carolyn W. Kone*
                                        Carolyn W. Kone

Exhibit A

Case 3:01-cv-01798-AWT    Document 198    Filed 06/18/2008    Page 12 of 14

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

James Greenberg, Esquire (JG#9651)
KOZLOV, SEATON, ROMANINI, BROOKS
    & GREENBERG, P.C.
1940 Rt. 70 East
Suite 200
Cherry Hill, NJ 08003
(609) 424-8200
Attorney for Defendants

---

| | |
|---|---|
| DIRK EPPERSON and<br>BETTY SCHNEIDER<br>    Plaintiffs,<br><br>v.<br><br>Irvin Richter, Hill International, Inc.<br>Hill Arts and Entertainment Systems, Inc.<br>N/k/a HAESI Software, Inc.<br><br>    Defendants. | : DOCKET NO. CV99-3053 (SSB)<br>: Civil Action<br>:<br>:<br>:<br>: **DEFENDANT HILL INTERNATIONAL INC.'S**<br>: **RESPONSE TO PLAINTIFFS' REQUEST FOR**<br>: **PRODUCTION OF DOCUMENTS**<br>:<br>: |

## GENERAL OBJECTIONS

    1.    Defendant objects to this Request for Documents to the extent that they are overly broad, unduly burdensome, vague, vexatious, ambiguous, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

    2.    Defendant objects to Plaintiff's Request for Documents to the extent that they impose any duty or obligation upon Defendant in excess of the duties and obligations imposed by the Federal Rules of Civil Procedure.

    3.    Defendant objects to Plaintiff's Request for Documents to the extent that they seek information protected from disclosure by the attorney-client privilege, attorney work product doctrine, the joint defense privilege, court orders or any other similar privilege or immunity.

    4.    Defendant objects to Plaintiff's Request for Documents insofar as they seek information in the possession, custody or control of any other party to this action or information concerning the policies and practices of any other party.

    5.    Defendant objects to Plaintiff's Request for Documents to the extent that they would require it to conduct research and investigations or to acquire information not presently

privilege and/or constitutes proprietary/confidential information to which Plaintiff is not otherwise entitled.

25. Copies of any reports prepared by experts whom HILL intends to call at trial.

   **None at present, other than the Fairness Opinion.**

26. Copies of any reports prepared by investigators or consultants for HILL.

   **None at present.**

27. Copies of any exhibits which HILL intends to offer at trial.

   **Not yet determined.**


KOZLOV, SEATON, ROMANINI, BROOKS & GREENBERG
Attorneys for Defendant Hill International, Inc.


By:_____
       James Greenberg, Esquire

Dated: February 20, 2001